APPEAL NO. 19-1422

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

Eric Schilling
Blaine Krohn
Erik Sinclair

On behalf of themselves and
all others similarly situated

      Appellants

      v.

PGA Inc.

      Appellee

Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 1:16-cv-00202-WCG
Before the Honorable William Conley

BRIEF OF PLAINTIFFS-APPELLANTS

Yingtao Ho
yh@previant.com
THE PREVIANT LAW FIRM, S.C.
310 W. Wisconsin Ave. Suite 100MW
Milwaukee, WI 53202
(414) 271-4500
(414) 271-6308 FAX
Attorneys for Plaintiffs-Appellants

# PLAINTIFF-APPELLANTS' RULE 26.1 DISCLOSURE STATEMENT

Plaintiffs-Appellants, by their attorneys, make the following disclosures in compliance with Fed. R. App. P. 26.1 and Cir. R. 26.1:

1.     The full name of the only parties that the attorneys represent in this case are: Eric Schilling, Blaine Krone, and Erik Sinclair, on behalf of themselves and members of the collective and class actions that the District Court certified.

2.     The name of all law firms whose partners or associates have appeared for the parties in this case or are expected to appear for the parties in this Court: The Previant Law Firm, S.C.

3.     If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any: Not applicable.

ii) List any publicly held company that owns 10% or more of the party's or amicus' stock: Not applicable.

Dated this 24th day of June, 2019.

/s/ Yingtao Ho
Yingtao Ho

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW: ...................................2

STATEMENT OF THE CASE ...............................................................................2

    A.    Statement of Facts. ...................................................................................2

    B.    Procedural History. ..................................................................................5

SUMMARY OF ARGUMENT ...............................................................................7

STANDARD OF REVIEW .....................................................................................9

ARGUMENT ........................................................................................................10

    1.    Cash Payments that PGA Labels Cash Fringe Payments Constitute Remuneration for Employment that Cannot be Excluded from the FLSA Regular Rate. ..................................................................................10

    2.    The Cash Fringe Must be Included When Computing Overtime Pay for Hours Worked on Wisconsin Prevailing Wage Projects. ...............16

    3.    Wisconsin Non-Prevailing Wage Overtime Pay Should be Computed Using the Regular Rate Including Cash Fringe Payments. ..................25

        a.    The Wisconsin Supreme Court Would Rely on the FLSA to Interpret DWD §274.03' Meaning of the "Regular Rate of Pay". ..................................................................................................26

        b.    PGA Cannot Rely on 29 U.S.C. §207(g)(2) of the FLSA to Use the Type of Work Method to Compute Overtime Pay Under Wisconsin Law. ..............................................................................29

        c.    The Cash Fringe Must be Included When Computing Non-Prevailing Wage Wisconsin Overtime Pay. ...............................31

    4.    Conclusion. .............................................................................................34

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7) .................35

CERTIFICATE OF SERVICE ..............................................................................35

STATEMENT THAT ALL REQUIRED MATTERS .............................................36

# TABLE OF AUTHORITIES

**Cases**

Acton v. City of Columbia, 436 F. 3d 969 (8th Cir. 2006) ...................................13

Baouch v. Werner Enterprises, Inc., 908 F. 3d 1107 (8th Cir. 2018).....................15

Bay Ridge Operating Co. v. Aaron, 334 U.S. 446 (1948).......................................31

Blanchar v. Standard Ins. Co., 736 F. 3d 753 (7th Cir. 2013) ..............................14

Bonner, 2011 WL 902252 *3..................................................................................17

Bullock v. Bank Champaign, N.A., 569 U.S. 267 (2013) .......................................19

Central States Pension Fund v. Messina Products, LLC, 706 F. 3d 874
    (7th Cir. 2013).................................................................................................11

Champine v. Milwaukee County, 2005 WI App 75 ¶16-17; 280 Wis. 2d 603 .......24

City of Brookfield v. WERC, 153 Wis. 2d 238 n. 2 (Ct. App. 1989) .....................24

DaimlerChrysler v. LIRC, 2007 WI 15 ¶10, 299 Wis. 2d 1 .................................21

Fabouri v. Pizza Hut of America, Inc., 824 F. 2d 470 (6th Cir. 1987)...................32

Flores v. City of San Gabriel, 824 F. 3d 890 (9th Cir. 2016);
    cert. denied by 137 S. Ct. 2117......................................................................16

Gold v. City of Adams, 2002 WI App 45 ¶13, 251 Wis. 2d 312 ...........................23

Johnson v. Miami-Dade County, 2017 WL 1536054 *3 (S.D. FL. 2017) ..............24

Joint Indus. Bd. Of Elec. Indus. v. U.S., 391 U.S. 224 (1968)..............................23

Kieninger v. Crown Equip. Corp., 2019 WI 27 ¶29; 386 Wis. 2d 1 ......................31

Kuhnert v. Advanced Laser Machining Inc., 2011 WI App 23 ¶16-18;
    331 Wis. 2d 625 (Ct. App. 2011)....................................................................31

Lexington Ins. Co. v. Rigg & Krapp Inc., 165 F. 3d 1087 (7th Cir. 1999) .............19

Madison v. Res. For Human Dev., 233 F. 3d 175 (3rd Cir. 2000).........................13

Matter of Northwest Eng'g Co., 863 F. 2d 1313 (7th Cir. 1988)...........................24

Powell v. U.S. Cartridge Co., 339 U.S. 497 (1950)................................................36

Sobczak v. AWL Indus., 540 F. Supp. 2d 354 (E.D. N.Y. 2007) ...........................12

Spoerle v. Kraft Foods Global, 614 F. 3d 427 (7th Cir. 2010)......................... 34, 35

Sutula-Johnson v. Office Depot, 893 F. 2d 967 (7th Cir. 2018). ...........................11

Timmerman v. Modern Indus. Inc., 960 F. 2d 692 (7th Cir. 1992).......................19

U.S. v. Navistar Int'l Transp. Corp., 152 F. 3d 702 (7th Cir. 1998) ......................30

U.S. v. Quality Stores, Inc., 572 U.S. 141 (2014) .................................................15

Walling v. Youngerman-Reynolds Harwood Co., 325 U.S. 419 (1945)................30

Weninger v. General Mills Corp., LLC, 344 F. Supp. 3d 1005 (E.D. WI. 2018) ...14

Winebow Inc. v. Capitol-Hustling, Inc., 867 F. 3d 862 (7th Cir. 2017) ......... 19, 20

Zimmerman v. Dep't of Health & Social Serv., 169 Wis. 2d 498
(Ct. App. 1993) ...................................................................................................20

**Statutes**

28 U.S.C. §1367 ........................................................................................................2

29 C.F.R. §531.60 ...................................................................................................12

29 C.F.R. §778.215(5) ............................................................................................17

29 C.F.R. §778.6 .....................................................................................................13

29 C.F.R. §785.18 ...................................................................................................38

29 U.S.C. §1291 ........................................................................................................3

29 U.S.C. §186(c) ...................................................................................................22

29 U.S.C. §203(o) ...................................................................................................35

29 U.S.C. §207(e) ............................................................................................ 14, 18

29 U.S.C. §207(e)(4)................................... 3, 8, 10, 12, 13, 14, 16, 17, 38

29 U.S.C. §207(e)(8)...............................................................................................18

29 U.S.C. §207(g)(2)................................................................ 10, 34, 35, 39

29 U.S.C. §213(a) and (b)......................................................................................12

29 U.S.C. §216(b) .....................................................................................................2

29 U.S.C. §218(a) ...................................................................................................35

DWD §272.03(2)(h)................................................................................................33

DWD §272.12(2)(c)2...............................................................................................38

DWD §274.01(3) and (4) ........................................................................................33

DWD §274.03 ....................................................................................... 2, 10, 33, 37

DWD §274.04(1) .....................................................................................................38

DWD §290.01(10) ............................................................................................ 25, 28

Wis. Stat. §§66.0903(1)(c)......................................................................................22

Wis. Stat. §109.03(1) and (5)...................................................................................2

Wis. Stat. §66.0903(4)(a)................................................................................. 21, 36

Wis. Stat. §66.0903(4)(a)1.....................................................................................18

# JURISDICTIONAL STATEMENT

This case arises out of a complaint for overtime wages under the Fair Labor Standards Act and Wisconsin law by the Plaintiffs, who were hourly jobsite employees employed by the Defendant PGA Inc. ("PGA") to perform work on jobsites. The District Court's jurisdiction over Plaintiffs-Appellants' complaint was based upon the Fair Labor Standards Act, 29 U.S.C. §216(b). The District Court had supplemental jurisdiction over the Plaintiffs' claims for overtime wages under Wis. Stat. §109.03(1) and (5) and DWD §274.03 pursuant to 28 U.S.C. §1367.

On October 23, 2018, the Honorable William Conley issued an Order granting the Defendant's motion for summary judgment on the issues that are the subject of this appeal, including whether cash payments that PGA made to the Plaintiffs, which it designated as cash fringe payments, must be included when computing the Plaintiffs' overtime pay under both the FLSA and Wisconsin law; and whether under Wisconsin law an employer must utilize the average wage rate earned during the workweek to compute its employees' overtime pay. (Docket #132) After other claims were resolved through a settlement, the Court entered judgment for PGA on the claims on which it granted summary judgment in its favor. (Docket #142)

Plaintiffs-Appellants filed the instant notice of appeal on March 8, 2019. The appeal was perfected on April 1, 2019, when the Court ordered for the appeal fee

paid for a different case to be transferred and applied to case 19-1422. This court has jurisdiction over the District Court's decision pursuant to 29 U.S.C. §1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW:

1. Did the District Court err by finding that Under the Fair Labor Standards Act, cash payments that the employer designated to be cash fringe payments can be excluded from the computation of the regular rate under 29 U.S.C. §207(e)(4) of the FLSA?

2. Did the District Court err by holding that, under Wisconsin prevailing wage statutes and regulations, cash payments that the employer designated to be cash fringe payments can be excluded from the computation of prevailing wage overtime pay?

2. Did the District Court err by holding that under Wisconsin law, the Appellee can use the rate for the type of work that its employees performed during overtime hours worked, rather than their regular rates, to compute their overtime pay? If so, must cash payments that the employer designated as cash fringe payments be included when computing the employee's regular rates?

## STATEMENT OF THE CASE

A. <u>Statement of Facts</u>.

Eric Schilling and Blaine Krohn worked for PGA Inc. at the Debot Hall Project between approximately May 20th, 2015 and the first week of August of 2015

2

for a total of 12 weeks. The third named plaintiff, Erik Sinclair, worked for PGA Inc. between September of 2014 and August of 2015. (Appx. pg. 2, ¶3)

Prevailing wage determinations issued by the Wisconsin Department of Workforce Development ("DWD") contain, for each trade working on a prevailing wage project, separate columns for the hourly basic rate of pay determined by the DWD, the fringe benefit rate, and the total of the hourly basic rate of pay and the fringe benefit rate. (Appx. pg. 2, ¶4)

PGA provides some fringe benefits to its employees and would compute the hourly value of employer contributions for fringe benefits by dividing the annual cost of the contributions by 2,080 hours. (Appx. pg. 2, ¶5) Whenever a PGA employee works on a prevailing wage project and received non-cash fringe benefit contributions that total less than the fringe benefit rate shown on the prevailing wage determination, PGA would pay to its employees in cash the difference. (Appx. pg. 3-5, ¶6, 11) This is because PGA is required by law to pay to its employees cash payments and total hourly contribution for bona fide economic benefits that equal or exceed the total prevailing wage rate. DWD §290.04(1). The parties refer to these cash payments as cash fringe payments. (Appx. pg. 3, ¶7)

For every hour of overtime worked on a prevailing wage project PGA would pay to its employees (including journeymen, apprentices, and subjourneypersons) 1.5 times the hourly basic rate shown on the prevailing wage determination plus the

3

cash fringe, rather than 1.5 times both the hourly basic rate of pay and the cash fringe. (Appx. pg. 3, ¶8) PGA admits that it would at least sometimes compute overtime pay using the rate for the work performed at the end of the week. (Appx. pg. 7, ¶2) For example, during the week of July 20th to the 24th, 2015 Erik Sinclair was paid for 39 hours at the prevailing wage General Laborer rate of $24.21 per hour, and 9 hours at the prevailing wage Steamfitter rate of $28.05 per hour. (Appx. pg. 23-24) For each of Sinclair's 8 overtime hours worked he was paid based on the General Laborer rate of $24.21 per hour, rather than the higher average wage rate he earned during the workweek. (Appx. pg. 24)

Similarly, during the week ending June 27, 2015, an employee whose first letter of the first name is "N" earned $2,214.20 for the workweek, including $1,959.20 for 40 hours worked on the prevailing wage Harvey Hall Project, and 10 overtime hours worked on other projects. (Appx. pg. 9, second employee from the top) "N" therefore earned $255 for his 10 overtime hours worked on other projects, so that for each of his overtime hours worked this week he received $25.50 per hour, rather than 1.5 times the much higher average straight time wage rate that he earned during the workweek.

PGA pays a cash fringe to its employees only for their actual hours of work on prevailing wage projects. (Appx. pg. 3-4, ¶9) Cash fringe payments are paid to the employee on his check, without any restrictions on how the employee can use

4

the cash payments. (Appx. pg. 4, ¶10) PGA calculates and pays the appropriate cash fringe payment for all hours worked by its employees on prevailing wage projects, not just overtime hours worked. (Appx. pg. 4-5, ¶11) PGA would withhold federal, state, and FICA taxes from cash payments made to its employees that it labels as cash fringe payments. (Appx. pg. 5, ¶12)

B.    Procedural History.

The original complaint in this case was filed on March 31, and included FLSA consent forms from Eric Schilling, Blaine Krohn, and Eugene Nickell. (Docket #1) Of the claims on appeal, the only ones included in the original complaint were that cash payments that PGA labelled as cash fringe payments should be included when computing the Plaintiffs' FLSA and Wisconsin law overtime pay. (Id.) The Court accepted the parties' stipulation on conditional certification of the FLSA claims on November 3, 2017. (Docket #24) A total of 8 employees subsequently opted into the lawsuit including Eric Sinclair. (Docket #25, 27, 32, 34-36)

On August 30, 2016, the parties consented to the filing of the Second Amended Complaint, which removed Eugene Nickell as a named plaintiff. (Docket #15-16) On February 16, 2017, the Court granted the Plaintiffs' motion to amend the complaint in part, permitting the Plaintiffs to change Erik Sinclair from an opt-in plaintiff to a named plaintiff; and permitting the Plaintiffs to bring their Wisconsin

law claim that overtime pay must be computed using the average straight time wage earned during the week. (Docket #61)

On March 14, 2018, the Court granted the Plaintiffs' motion to certify a Rule 23 class and denied PGA's motion to decertify the FLSA collective action. (Docket #118) The Court then held oral argument on the parties' cross motions for partial summary judgment. (Docket #127) Following the oral argument the Plaintiffs filed a motion seeking leave to file a supplemental brief arguing that cash fringe payments must be included when computing prevailing wage overtime pay pursuant to Wisconsin prevailing wage statutes rather than regulations. (Docket #128, #128-1).

On October 23, 2018, the Court granted the Plaintiffs' motion to file their supplemental brief. (Docket #132). It nonetheless granted PGA's motion for summary judgment on the cash fringe and overtime computation claims. (Id.)

The Court did not grant summary judgment for either party on Count III of the Operative Complaint, which advanced prevailing wage claims for Schilling and Krohn. The parties subsequently filed both a stipulation and a joint motion to dismiss Count III of the Operative Complaint. (Docket #139, #140)

On February 25, 2019, the Court both denied the Plaintiffs' motion for reconsideration on the entry of summary judgment in favor of PGA's favor, and accepted the parties' stipulation and joint motion to dismiss Count III of the

Operative Complaint. (Docket #141) On the next day the Court entered judgment in favor of PGA on the cash fringe and overtime computation claims. (Docket #142)

The Plaintiffs timely appealed from the entered judgment on March 8, 2019.

## SUMMARY OF ARGUMENT

Cash payments paid by PGA to its employees, which it labelled cash fringe payments, constitute remuneration for employment under §207(e) of the FLSA when they were paid to employees in return for their work on prevailing wage projects for PGA. Because the cash payments are remuneration for employment, they must be included in the FLSA regular rate unless PGA can show one of the eight exemptions recognized by §207(e) is applicable. The exemption addressing fringe benefit contributions §207(e)(4) does not apply when cash fringe payments were paid to the employees rather than to a trustee or third person, and when there is no accountability on how the cash fringe payments will be spent, so that the purpose of the cash fringe payments is not to provide qualifying benefits. None of the other exceptions in §207(e) even arguably apply. There is no basis for relying on a Wisconsin agency's interpretation of Wisconsin law to interpret the FLSA, given the need to achieve a uniform interpretation of the FLSA throughout the United States.

Harmonizing Wisconsin's prevailing wage statutes and regulations, all cash payments must be included in the computation of prevailing wage overtime pay, while cash payments of bona fide economic benefits may be excluded from the

7

computation of prevailing wage overtime pay. Bona fide economic benefits are those funded by irrevocable employer contributions to a plan, program, trust, or fund. Directly paid economic benefits such as vacation or holiday benefits are funded by irrevocable employer contributions when the employer sets aside a portion of compensation earned by each hour worked by the employee throughout the year to fund the benefits. On the other hand, cash fringe payments are earned during the week when the prevailing wage work was performed, rather than by the employee's work throughout the year. Because Cash fringe payments are paid directly by the employer, rather than funded by employer contributions to a fund, plan, program, or trust, they are not bona fide economic benefits. Wisconsin law in fact recognizes that payments required by law, such as cash fringe payments that PGA had to make in order to comply with Wisconsin prevailing wage laws, are not economic benefits at all. Because cash fringe payments are cash payments, rather than cash payments of bona fide economic benefits, they cannot be excluded from the computation of prevailing wage overtime pay.

Under DWD §274.03 overtime pay must be computed as time and a half their regular rate of pay under DWD §274.03. Under the FLSA, the regular rate of pay refers to the average straight time pay rate received by an employee during a workweek. Wisconsin is likely to adopt the same definition of "regular rate of pay" when Wisconsin courts regard authority interpreting the FLSA to be instructive on

8

how parallel Wisconsin law should be interpreted. Wisconsin also adopted §207(e) of the FLSA as a part of its own definition of the "regular rate of pay", when no Wisconsin law provisions separately address whether overtime premium payments, fringe benefit contributions, and expense reimbursements can be excluded when computing overtime pay. Moreover, Wisconsin has never adopted the equivalent of 29 U.S.C. §207(g)(2) of the FLSA, while it is permitted by the savings clause of the FLSA to require the payment of minimum overtime wages higher than those required by the FLSA.

Wisconsin non-prevailing wage overtime pay therefore must be computed using the average wage rate earned by the employee during the workweek. Cash fringe payments can no more be excluded from the computation of the Wisconsin law regular rate than it can be excluded from the computation of the FLSA regular rate. PGA cannot rely on prevailing wage overtime statutes, which only apply to how jobsite prevailing wage overtime pay should be computed, to justify its method of computing overtime pay for hours worked away from prevailing wage jobsites.

## STANDARD OF REVIEW

The proper interpretation of statutes and precedents as applied to undisputed facts presents a question of law which the Court should review de novo. *Central States Pension Fund v. Messina Products, LLC*, 706 F. 3d 874, 879 (7th Cir. 2013). As the above Statement of Facts' repeated references to PGA's Responses to the

Plaintiffs' Findings of Fact illustrate, the summary judgment record consists of either undisputed facts, or facts developed from documentation whose authenticity PGA does not dispute. The District Court's application of law to these undisputed facts are therefore subject to de novo review.

Because the Court is reviewing a grant of summary judgment to PGA, the Plaintiffs should receive the benefit of any conflicts of evidence in the record. *Sutula-Johnson v. Office Depot*, 893 F. 2d 967, 969-970 (7th Cir. 2018).

## ARGUMENT

**1.    Cash Payments that PGA Labels Cash Fringe Payments Constitute Remuneration for Employment that Cannot be Excluded from the FLSA Regular Rate.**

§207(a)(1) of the FLSA requires for overtime pay to be computed as time and a half the employee's regular rate of pay. The statutory provision equally applies to workweeks when the employee performed some work on state prevailing wage projects. *Sobczak v. AWL Indus.*, 540 F. Supp. 2d 354, 360-361 (E.D. N.Y. 2007) (Authorizing action for FLSA overtime pay computed using prevailing wages that the Plaintiffs either did, or under the prevailing wage determination should have received). Indeed, while the FLSA and its implementation regulations recognize numerous types of payments that should be excluded from the regular rate, see for example §207(e); 29 C.F.R. §531.60 (tips in addition to the claimed tip credit may be excluded from the regular rate), no exception that would authorize excluding

10

prevailing wages from the regular rate has ever been recognized. Similarly, the numerous exemptions to the FLSA's overtime pay requirements recognized by 29 U.S.C. §213(a) and (b) do not include one for workweeks in which the employee performed some prevailing wage work.

Moreover, as the District Court recognized, regulations interpreting federal prevailing wage laws do not apply to this case, given that this case concerns how overtime pay should be computed during workweeks when the Plaintiffs worked on Wisconsin prevailing wage projects rather than federal prevailing wage projects. Indeed, the plain language of 29 C.F.R. §778.6 provides that Davis-Bacon regulations only apply to the computation of FLSA overtime pay during workweeks when the employee was subject to fringe benefit determinations under Davis-Bacon or related Acts.

The FLSA's overtime pay provisions therefore apply to how the named and opt-in Plaintiffs' overtime pay should be computed during workweeks when they worked on Wisconsin prevailing wage projects. By its plain language, §207(e) of the FLSA recognizes that all remuneration for employment must be included in the regular rate unless one of the exceptions recognized by the statute is satisfied. *Acton v. City of Columbia*, 436 F. 3d 969, 976 (8th Cir. 2006); *Madison v. Resources For Human Dev*., 233 F. 3d 175, 187 (3rd Cir. 2000) (Both holding there is a statutory presumption that renumeration in any form should be included in the regular rate,

unless the employer can meet its burden of demonstrating that an exemption is applicable). This Court has more generally recognized that employers bear the burden of proof on FLSA exemptions, while at least one district court from within the Seventh Circuit has required the employer to prove the applicability of an exemption from the §207(e) regular rate. *Blanchar v. Standard Ins. Co.*, 736 F. 3d 753, 756 (7th Cir. 2013); *Weninger v. General Mills Corp., LLC*, 344 F. Supp. 3d 1005, 1009 (E.D. WI. 2018).

Determining whether payments by the employer to the employee should be included in the regular rate is therefore a two steps process. First, the employee must demonstrate the payments constitute remuneration for employment. Second, and if the employee can meet this burden, the payment must be included in the FLSA regular rate unless the employer can meet its burden of demonstrating that at least one of the eight exemptions recognized by 29 U.S.C. §207(e) is applicable.

Cash payments made by PGA to the Plaintiffs in return for their work on Wisconsin prevailing wage projects clearly constitute remuneration for employment. United States Supreme Court has interpreted remuneration for employment under federal tax laws to include payments to employees in consideration for services that they rendered to the employer. *U.S. v. Quality Stores, Inc.*, 572 U.S. 141, 146-147 (2014). Remuneration for employment under the FLSA has a similar meaning. *Baouch v. Werner Enterprises, Inc.*, 908 F. 3d 1107, 1117-1118 (8th Cir. 2018)

(Expense reimbursements constitute remuneration for employment when computed based on work performed for the employer). In this case, PGA paid cash to the Plaintiffs, each of whom indisputably was employed by PGA, as compensation for the hours that they worked for PGA on Wisconsin prevailing wage projects. (Appx. pg. 4-5, ¶9, 11) PGA then withheld the exact same taxes from both cash payments that it labeled as wages, and cash payments that it labelled as cash fringe payments. (Appx. pg. 5, ¶12) Both the wage payments and the cash fringe payments equally constitute remuneration for employment. Indeed, even bona fide fringe benefit contributions should constitute remuneration for employment, as otherwise there would be no need for Congress to enact an exemption, §207(e)(4), to exclude fringe benefit contributions to a trustee or third person from the regular rate. Because cash fringe payments constitute remuneration for employment, the District Court erred by requiring the Plaintiffs to point to support demonstrating the FLSA regular rate includes cash fringe payments (a question of first impression), rather than requiring PGA to meet its burden of demonstrating that at least one of the eight §207(e) exemptions are applicable, so that the cash fringe payments though remuneration for employment may be excluded from the regular rate of pay. (Docket #132, pg. 13)

The so-called cash fringe payments do not qualify for exemption under the subsection of §207(e) that addresses fringe benefit payments, 29 U.S.C. §207(e)(4). That exception by its plain language only applies to contributions (a) irrevocably

13

made by an employer to a trustee or third person; *and* (b) pursuant to a bona fide

plan for providing old-age, retirement, life, accident, or health insurance or similar

benefits.[1]  The first of these two requirements is not satisfied when PGA pays cash

that it labels cash fringe payments directly to the employee, rather than to a trustee

or third person.  *Flores v. City of San Gabriel*, 824 F. 3d 890, 901-902 (9th Cir.

2016); *cert. denied by* 137 S. Ct. 2117; *Bonner v. Metro Sec. Services, Inc.*, 2011

WL 902252 *3 (W.D. TX. 2011).

The second requirement that fringe benefit contributions be made pursuant to

a bona fide plan to provide benefits is not satisfied if the plan gives the employee the

option to receive employer contributions in cash rather than benefits, and if these

cash payments constitute more than an incidental part of the plan.  29 C.F.R.

§778.215(5).  The requirement for contributions to a plan to provide benefits is not

satisfied if more than 40% of the Plan's payments are made in cash rather than

qualifying benefits.  *Flores*, 824 F. 3d at 903.  *See also Bonner*, 2011 WL 902252

*3 (§207(e)(4) is not satisfied when there was no accountability that employer

contributions will be used to fund employee benefits).  In this case, 100% of the so-

called cash fringe benefits are paid to the employees in cash, with no accountability

that the employees will use the money to purchase health insurance or similar

---

[1] As the Plaintiffs' discussion on the Wisconsin prevailing wage overtime claim will illustrate, the Plaintiffs do not believe the cash payments that PGA labels as cash fringe payments constitute contributions at all.  The Court need not reach that issue to find that the cash fringe payments cannot be excluded from the computation of the regular rate under the FLSA.

14

benefits, rather than to endanger their health by purchasing cigarettes or sky diving lessons. The cash fringe payments therefore flunk both the purpose requirement, and the requirement that contributions must be paid to a trustee or third person. PGA therefore cannot rely on §207(e)(4) to argue that cash fringe payments may be excluded from the FLSA regular rate.

None of the other seven exceptions recognized by §207(e) are even arguably applicable: Cash fringe payments are made in exchange for the Plaintiffs' work on prevailing wage projects, and therefore are not gifts. Cash fringe payments therefore are compensation for hours of work, rather than either expense reimbursements, pay for hours not worked, or discretionary bonus payments. Because cash fringe payments are paid for each and every qualifying hour worked on prevailing wage projects, rather than only daily or weekly overtime work hours, §207(e)(5) through (7) do not apply. The cash fringe payments also have nothing to do with stock options, stock appreciation rights, or employee stock purchase programs addressed by §207(e)(8). Analyzing the plain language of §207(e) therefore results in the conclusion that cash payments that PGA labels cash fringe payments must be included when computing the FLSA regular rate.

The District Court erred by ignoring the above analysis of the plain language of the FLSA in favor of its erroneous analysis of Wisconsin prevailing wage law. (Docket #132, pg. 13) Because the Plaintiffs' worked on jobsites for PGA, the

15

prevailing wage law requirement for overtime pay to equal time and a half the hourly basic rate of pay only applied to them when they worked on the site of a project of public works. Wis. Stat. §66.0903(4)(a)1. It makes no sense to rely on the Wisconsin prevailing wage law concept of the "hourly basic rate of pay" to interpret what the FLSA means by remuneration for employment that must be included in the regular rate, when the FLSA does not use the term "hourly basic rate of pay" at all to refer to compensation that must be included in the FLSA overtime pay computation. More fundamentally, relying on state prevailing wage law to interpret the FLSA may result in the FLSA impermissibly having different meanings in different states, based on prevailing wage laws that each state's legislature enacts. *Bullock v. Bank Champaign, N.A.*, 569 U.S. 267, 276-277 (2013) (Important to have a uniform interpretation of federal law); *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010) (Failure to achieve a nationally uniform interpretation of federal law is an unfortunate consequence in a federal legal system.)

**2.      The Cash Fringe Must be Included When Computing Overtime Pay for Hours Worked on Wisconsin Prevailing Wage Projects.**

A Court must apply state substantive law when deciding a question of state law pursuant to supplemental jurisdiction. *Timmerman v. Modern Indus. Inc.*, 960 F. 2d 692, 696 (7th Cir. 1992). This Court therefore should apply Wisconsin's rules of statutory interpretation when deciding questions of Wisconsin law. *Winebow Inc.*

16

*v. Capitol-Hustling, Inc*., 867 F. 3d 862, 868 (7th Cir. 2017) (Applying Wisconsin rules of statutory interpretation to interpret a Wisconsin statute); *Lexington Ins. Co. v. Rigg & Krapp Inc*., 165 F. 3d 1087, 1093 (7th Cir. 1999) (Federal Courts sitting in diversity should not promote policy concerns when doing so would violate the state's rules for statutory interpretation). See more generally *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945) (State law claims should have the same outcome whether litigated in state court or in federal court under supplemental jurisdiction).

Under Wisconsin's rules of statutory interpretation, when the same subject is addressed by both statutes and regulations, a court need not consider the regulations at all if the language of the statutes is plain. *Winebow v. Capital-Hustling Co., Inc*., 2018 WI 60 ¶26; 381 Wis. 2d 732. The Court should therefore focus its analysis on the governing statute rather than other statutes and regulations. *Gister v. American Family Mut. Ins. Co*., 2012 WI 86 n. 14; 342 Wis. 2d 496. If the language of the statute is unambiguous and outcome determinative, the Court should enforce the statute's plain language while ignoring interpretative regulations contrary to the statute. *Village of Plain v. Harder*, 268 Wis. 507, 511 (1955) (Regulations promulgated by an administrative agency to carry out the provisions of a statute can have no force against the plain, contrary language of the statute); *Zimmerman v. Dep't of Health & Social Serv*., 169 Wis. 2d 498, 505 (Ct. App. 1993) ("Regulations may or may not correctly reflect the law. Where a regulation is inconsistent with the

17

statute, we apply the statute"). However, when it is possible to harmonize the statute with its implementing regulations, a court should construe those regulations together with the statute to make an effectual piece of legislation in harmony with common sense and sound reason. *DaimlerChrysler v. LIRC*, 2007 WI 15 ¶10, 299 Wis. 2d 1.

The District Court erred by ignoring Wisconsin's prevailing wage statutes in favor of its regulations when those statutes directly address which payments to the employee may be excluded from the computation of prevailing wage overtime pay: Under Wis. Stat. §66.0903(4)(a)[2], prevailing wage overtime pay equals time and a half the hourly basic rate of pay. The hourly basic rate of pay is defined as the hourly wage paid to any employee, excluding any contributions or payments for health insurance benefits, vacation benefits, pension benefits and any other bona fide economic benefits, whether paid directly or indirectly. Wis. Stat. §§66.0903(1)(c); Wis. Stat. §103.49(1)(b). Therefore, only contributions or payments of bona fide economic benefits can be excluded from the hourly basic rate of pay used to compute prevailing wage overtime pay. Bona fide economic benefits, in turn, are defined as economic benefits for which the employer makes irrevocable contributions to either a trust or fund created under 29 U.S.C. §186(c), or to any other bona fide plan, trust, program, or fund. Wis. Stat. §103.49(1)(am).

---

[2] The prevailing wage claims advanced by this lawsuit address the Plaintiffs' work on projects where solicitations for bid were sent out, or the contracts were signed, before Wisconsin's prevailing wage laws were repealed. The version of the laws that were current as of 2013, which were the versions that were in effect when the Plaintiffs worked for PGA in 2014 and later, can be found in the Plaintiffs' appendix.

Under the plain language of these statutory provisions, wage payments must be included in the hourly basic rate of pay, while contributions or payments for bona fide economic benefits may be excluded from the hourly basic rate of pay. Wages are differentiated from bona fide economic benefits in that whereas wages are paid to the employee directed by the employer, bona fide economic benefits are funded by employer contributions to a plan, program, trust, or fund. The definition of "hourly basic rate of pay" recognizes that bona fide economic benefits may be paid out of employer contributions either directly in cash (such as for vacation, holiday, or self-insured health benefits), or indirectly by using employer contributions to purchase the benefit from a third-party provider. Direct payments of bona fide economic benefits funded by employer contributions to the employee, not all direct payments to the employee as held by the District Court on page 8 of its decision, can be excluded from the hourly basic rate of pay used to compute prevailing wage overtime pay. (Docket #132, pg. 8)

Employer contributions are distinguishable from direct employer cash payments because whereas direct employer cash payments are paid to the employee to be used as the employee sees fit, employees benefit from employer contributions to a plan, program, trust, or fund's only when they meet eligibility requirements for receiving benefits. Contrast *Gold v. City of Adams*, 2002 WI App 45 ¶13, 251 Wis. 2d 312 (Cash is money the employee can immediately use to pay his mortgage or

19

purchase tickets to a ball game) with *Joint Indus. Bd. Of Elec. Indus. v. U.S.*, 391 U.S. 224, 227-228 (1968) (Fringe benefit contributions are not entitled to the bankruptcy priority of wages when they were paid to a trustee, and the employee benefits only when he meets the program's eligibility requirements). Contributions therefore constitute the first of two steps to provide benefits to employees, with the actual payment of benefits when and if the employee meets eligibility requirements constituting the second step.

The same two steps process of contributions then payment equally applies to bona fide economic benefits paid directly in cash, such as vacation and holiday benefits. Vacation benefits constitute deferred compensation that is earned by the employees' work throughout their employment, but paid only when the employee meets eligibility requirements, such as working a sufficient number of weeks to qualify for receiving vacation benefits or working on the day before or after the holiday to receive holiday benefits. *Matter of Northwest Eng'g Co.*, 863 F. 2d 1313, 1316 (7th Cir. 1988); *City of Brookfield v. WERC*, 153 Wis. 2d 238 n. 2 (Ct. App. 1989). Courts have similarly recognized holiday pay as a form of deferred compensation earned by the employee throughout the year. Johnson v. Miami-Dade County, 2017 WL 1536054 *3 (S.D. FL. 2017).

Wisconsin law prohibits the retroactive modification or elimination of earned benefits. *Champine v. Milwaukee County*, 2005 WI App 75 ¶16-17; 280 Wis. 2d

603. As the employee is performing services for the employer and earning vacation or holiday benefits that he may in the future receive, the employer must set aside money either explicitly or implicitly to meet these new financial obligations. Wisconsin indeed defines hourly contributions as the per hour cost of economic benefits provided by the employer to its employees. DWD §290.01(10). Complying with this regulation, PGA divides its fringe benefit payments by 2,080 hours, i.e. the presumed number of hours worked by its employees throughout the year, to compute the hourly contribution rate. (Appx. pg. 2, ¶4) Wisconsin therefore presumes the employer is setting aside money from each and every hour worked by its employees (or taking a portion of the compensation otherwise payable to the employees for each and every hour worked) to fund fringe benefits for its employees. Contributions for directly paid bona fide economic benefits refer to the per hour amount that the employer explicitly or implicitly sets aside to fund the benefits.

On the other hand, cash payments that PGA designates as cash fringe payments are not funded by monies that the employer explicitly or implicitly sets aside. Indeed, cash payments that PGA designates as cash fringe payments are indistinguishable from cash payments that PGA designates as prevailing wage payments, when it comes to whether they are funded by employer contributions: Employees receive both on the same paycheck for performing the exact same work on the same project. (Appx. pg. 9). PGA, not Wisconsin law, decides what portion

of cash payments should be classified as cash fringes rather than wage payments to maximize savings on employment taxes and overtime pay. Cash fringe payments, just like wages, are funded by direct employer payments. In contrast, bona fide economic benefits are funded by explicitly or implicit employer contributions, i.e. monies explicitly or implicitly set aside by the employer to fund the benefit pursuant to a two steps process of first making contributions, and then using said contributions to pay for the economic benefit.

Nor are cash fringe benefits provided by a bona fide plan, program, trust, or fund. PGA would pay cash fringe on an as needed basis, when a combination of designated wages and non-cash fringe benefits paid to the employee cannot satisfy the full amount required by the prevailing wage determination. (Appx. pg. 4-5, ¶11) On a prevailing wage project PGA may also pay to its employees designated wages higher than the employee's wage rate for non-prevailing wage projects in order to satisfy prevailing wage law requirements. Thus "N" earned designated wages of $28.05 per hour and designated cash fringe payments of $20.93 per hour for his work on the prevailing wage Harvey Hall Project, but only wages of $17 per hour for his work on the non-prevailing wage project. (Appx. pg. 9) In order to comply with prevailing wage laws PGA pays to its employees a cash payment above their regular wage, then labels one portion of said cash payment a wage payment, and one portion of such cash payment a cash fringe payment. The so called "cash fringe" payments

22

are no more made pursuant to a bona fide plan, program, trust, or fund than the portion of cash payments labeled by PGA as wage payments. On the other hand, even for unfunded plans such as vacation and holiday benefits Wisconsin law require the employer to make a bona fide enforceable commitment to carry out a financially responsible plan or program, and to communicate said plan or program to both the DWD and in writing to the employees. DWD §290.01(10)(c). Unlike cash fringe payments, the vacation or holiday benefits would be made pursuant to a bona fide plan or program.

Put another way, if cash payments that PGA designates cash fringe payments constitute benefits funded by employer contributions to a bona fide plan, program, trust, or fund, then cash payments that PGA designates as wage payments would equally qualify as benefits funded by employer contributions to a bona fide plan, program, trust, or fund. It is not plausible that Wisconsin enacted statutes that authorized the exclusion of all cash payments from the hourly basic rate of pay used to compute overtime pay. If cash payments designated by PGA as wages must be included in the hourly basic rate of pay because they are not bona fide economic benefits, than cash payments designated by PGA as cash fringe payments must similarly be included in the hourly basic rate of pay.

That cash fringe payments are not funded by employer contributions is further illustrated by that they are payments involuntarily made by PGA because required

23

by law, rather than payments pursuant to a plan, trust, program, or fund set up PGA. Recognizing this distinction, Wisconsin law do not regard payments that the employer is required to make by federal, state or local law as economic benefits at all. DWD §290.01(10), note (c)[3]. PGA makes cash fringe payments only when the total value of non-cash fringe benefits received by the employee is lower than the fringe benefit rate shown on the prevailing wage determination, sot that an additional cash payment is required to comply with the minimum rate set forth in the prevailing wage determination. (Appx. pg. 3-5, ¶¶6, 11) These cash fringe payments are therefore payments made by PGA to comply with the prevailing wage laws, so that they constitute payments required by law rather than payments of economic benefits.

Because cash fringe payments are not bona fide economic benefits, PGA's payment of cash fringe to its employees cannot constitute contributions or payments for bona fide economic benefits, and therefore must be included in the hourly basic rate of pay. Cash fringe payments therefore cannot be excluded from the hourly basic rate of pay used to compute Wisconsin prevailing wage overtime pay.

---

[3] Said note provides:
> Economic benefits which an employer is required to pay pursuant to other federal, state, or local law are excluded. No credit shall be taken for the payments made for these economic benefits. For example, payments for worker's compensation insurance under either a compulsory or elective state statute are not payments for economic benefits under s. 66.0903 or 103.49, 2009 Stats. The omission in the above-mentioned statutes of any express reference to these payments, which are common in the construction industry, suggests that these payments shall not be regarded as an economic benefit.

**3.     Wisconsin Non-Prevailing Wage Overtime Pay Should be Computed Using the Regular Rate Including Cash Fringe Payments.**

The parties' difference on the computation of non-prevailing wage Wisconsin overtime pay is well illustrated by the two examples presented by the Plaintiffs: When a PGA employee received more than one prevailing wage pay rate during a single week, PGA would compute prevailing wage jobsite overtime pay using the rate for the type of work performed during overtime hours worked, rather than the higher average wage rate earned by the employee during the workweek. (Appx. Pg. 23-24) Similarly, when weekly overtime is worked away from the jobsite of a prevailing wage project, PGA would compute overtime pay using the rate for the type of work, rather than the average wage rate earned by the employee during the workweek counting the cash fringe payment. This was why for his overtime hours worked "N" received $25.50, or 1.5 times $17 per hour, rather than 1.5 times the much higher average wage rate excluding overtime premium pay that he earned during the workweek. (Appx. pg. 9)

Plaintiffs contend that under Wisconsin law, all overtime pay must be computed using the average wage rate, excluding overtime premiums, earned by the employee during the workweek; to the extent that results in higher overtime pay than those computed under the prevailing wage laws. Plaintiffs also contend the average wage rate when computing non-prevailing wage overtime pay must include cash payments that PGA has designated as cash fringe payments.

25

<u>The Wisconsin Supreme Court Would Rely on the FLSA to Interpret DWD §274.03' Meaning of the "Regular Rate of Pay".</u>

When a state's highest court has not ruled on an issue of law, a federal court sitting in diversity should predict how the state's highest court would resolve the issue. *Situla-Johnson*, 893 F. 3d at 974. A Court may make a prediction of how a state supreme court would interpret its wage laws based on the ordinary meaning of terms used by those laws, in the absence of controlling or strongly persuasive supreme court or court of appeals authority. *Situla-Johnson*, 893 F. 3d at 974, 976-977. The Court when predicting whether a State Supreme Court would adopt a federal statute's standards to interpret a state law may also consider whether such adoption is necessary to effectuate the state statute as written. *U.S. v. Navistar Int'l Transp. Corp.*, 152 F. 3d 702, 714 (7th Cir. 1998).

DWD §274.03 requires overtime pay to equal time and a half the employee's regular rate of pay. The regulation was enacted in 1977, while Wis. Stat. §103.02 which similarly uses the phrase "regular rate" was enacted in 1971. Long before 1971 the FLSA required computing overtime pay as time and a half the regular rate at which the employee is employed. United States Supreme Court precedents from the 1940s established that the regular rate refers to the average wage rate earned by the employee during the workweek. *Walling v. Youngerman-Reynolds Harwood Co.*, 325 U.S. 419, 425 (1945) (Regular rate shall reflect all payments the parties have agreed shall be received during the workweek exclusive of overtime payments;

26

and can be computed by dividing total payments by total hours worked).  *See also Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468-469 (1948) (Paid night shift differential should be included when computing the employee's regular rate of pay).

The Court should predict that the Wisconsin Supreme Court would hold the "regular rate of pay" as used in DWD §274.03 to mean the average straight time wage rate earned by the employee during the workweek, because Wisconsin is likely to look to analogous provisions of the FLSA when interpreting DWD §274.03.  The Wisconsin Supreme Court has held that when a federal regulation is virtually identical to, and is apparently the genesis of the state regulation, the federal regulation should occupy a central place in how the state regulation should be interpreted.  *Kieninger v. Crown Equip. Corp*., 2019 WI 27 ¶29; 386 Wis. 2d 1, 21. The Wisconsin Court of Appeals confirmed its interpretation of how overtime pay should be computed for salaried employees under Wisconsin law by noting that its interpretation was consistent with how the Wisconsin Supreme Court in an earlier decision interpreted the FLSA.  *Kuhnert v. Advanced Laser Machining Inc*., 2011 WI App 23 ¶16-18; 331 Wis. 2d 625 (Ct. App. 2011).  *See more generally Fabouri v. Pizza Hut of America, Inc*., 824 F. 2d 470, 474 (6th Cir. 1987) (Where both the FLSA and Michigan law use the term "regular rate" and both require overtime pay as time and a half the regular rate, and the interpretation of the fluctuating workweek was well established under the FLSA when Michigan enacted its law, the fluctuating

workweek method was also authorized to compute overtime pay under Michigan law). Similarly, where DWD §274.03 just like the FLSA requires computing overtime pay as time and a half the regular rate, where by the time DWD §274.03 was enacted it was well established that the "regular rate" under the FLSA meant the average straight time wage rate earned by the employee during the workweek, Wisconsin by writing DWD §274.03 to use the "regular rate" to compute overtime pay adopted the FLSA definition of the regular rate as the average straight time wage rate earned by the employee during the workweek.

Moreover, DWD §274.01(3) and (4) defines "regular" time to mean 40 hours worked per week, and "overtime" to mean hours worked in excess of 40 hours per week. Regular rate of pay therefore refers to the employee's regular time rate of pay, i.e. the rate of pay for the employee's regular time, his first 40 hours worked each week. DWD §274.03 therefore requires using the employee's rate of pay for his first 40 hours worked each week, rather than his rate of pay for the type of work performed during overtime hours, to compute his overtime pay. If the employee received more than one form of compensation during those 40 hours, his regular rate of pay for the week necessarily must be a blended rate.

The Wisconsin Supreme Court is similarly likely to read §207(e) of the FLSA into DWD §274.03. No Wisconsin statute or regulation explicitly authorizes excluding payments from the employer to the employee, such as overtime premium

payments, expense reimbursements, and health insurance or pension contributions, from the regular rate of pay. Wisconsin has however enacted regulations to exclude payments that are not covered by §207(e), such as tips in addition to the tip credit claimed by the employer, from the computation of the regular rate. DWD §272.03(2)(h). The most plausible explanation for this differential treatment is that the Wisconsin legislature and the DWD believed DWD §274.03 by using the term "regular rate of pay" already incorporated §207 of the FLSA's rules for how the regular rate of pay should be computed, so that there was no need to add provisions identical to §207(e) of the FLSA to Wisconsin's statutes and regulations.

b. <u>PGA Cannot Rely on 29 U.S.C. §207(g)(2) of the FLSA to Use the Type of Work Method to Compute Overtime Pay Under Wisconsin Law</u>.

While §207(a)(1) requires using the regular rate to compute overtime pay, an employer under the FLSA may use the type of work method to compute overtime pay provided it satisfies the requirements of §207(g)(2). Wisconsin, however, has not adopted any provisions that would authorize using the §207(g)(2) exemption method to compute overtime pay under Wisconsin law. Addressing another instance in which Wisconsin did not adopt a FLSA exemption, this Court held in *Spoerle v. Kraft Foods Global*, 614 F. 3d 427, 430 (7th Cir. 2010) that the Plaintiffs' time spent donning and doffing protective equipment was compensable under Wisconsin law though there was a collective bargaining agreement that made the donning and

29

doffing time unpaid, and even though said collective bargaining agreement provision would have protected the employer from liability under 29 U.S.C. §203(o) of the FLSA. Similarly, because Wisconsin did not adopt the equivalent of a §207(g)(2) exemption, under Wisconsin law all non-prevailing wage overtime pay must be computed using the regular wage rate earned by the employee during the workweek.

*Spoerle* also controls with respect to any argument that §207(g)(2) of the FLSA can preempt Wisconsin law. The Court noted that because §203(o) of the FLSA only shields an employer from liability under the minimum wage and overtime provisions of the FLSA, while the states are free to set higher labor standards, nothing in §203(o) limits the operation of the savings clause of the FLSA, 29 U.S.C. §218(a). Similarly, by its plain language §207(g) only shields the employer from liability under §207(a) of the FLSA, so that it does not protect the employer from liability under higher labor standards set by Wisconsin. The plain language of §218(a) of the FLSA, which states that no provision of the FLSA prohibits states from adopting higher labor standards such as a higher minimum for overtime pay, is controlling.

Nor can PGA avoid liability in part by arguing that, in instances in which the average wage rate earned by the employee during the week was higher than the applicable prevailing wage rate for the employee's overtime work, the employee's overtime computation must comply with Wisconsin's prevailing wage statutes rather

30

than the higher standard imposed by DWD §274.03. When the same work is subject to regulation by more than one wage statute, the employer should comply with the higher of two requirements in order to comply with both. *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 517-519 (1950). Though Wisconsin's legislature enacted numerous exceptions to DWD §274.03 in DWD §274.04 (individual exemptions) and DWD §274.08 (applying to public employees), it did not enact one for computing overtime pay on hours worked on the jobsite of a prevailing wage project. A Wisconsin employer therefore must pay to its employees overtime pay required by DWD §274.03 to the extent higher than overtime pay required by Wisconsin's prevailing wage laws.

    c.    <u>The Cash Fringe Must be Included When Computing Non-Prevailing Wage Wisconsin Overtime Pay</u>.

When the Plaintiffs worked overtime away from a prevailing wage jobsite, that work is not governed by Wisconsin's prevailing wage statutes at all, which instead only applies to their work on the jobsite of the prevailing wage project. Wis. Stat. §66.0903(4)(a)1. How overtime pay should be computed on hours worked away from the jobsite of a prevailing wage project therefore is not governed at all by Wisconsin's prevailing wage laws including its rules on whether cash fringe payments must be included in the computation of prevailing wage overtime pay. On the other hand, the Plaintiffs would concede that because prevailing wage jobsite overtime is governed by both DWD §274.03 and Wisconsin's prevailing wage laws,

31

the Wisconsin Supreme Court may adopt the harmonizing interpretation that the cash fringe should be included when computing the DWD §274.03 regular rate for prevailing wage overtime hours worked, only if cash fringes also must be included when computing prevailing wage overtime pay. This distinction is moot, however, when as discussed in section 2 above cash fringes do need to be included when computing prevailing wage overtime pay.

As applied to overtime hours worked away from the jobsites of prevailing wage projects, cash fringe payments can be excluded from the DWD §274.03 regular rate computation only if the exclusion is authorized by some provision of Wisconsin law. Since there are no Wisconsin statutes or regulations that discuss whether cash fringe payments or bona fide fringe benefit contributions can be excluded when computing the regular rate, the only possible authorization for such exclusions is that DWD §274.03, by using the same term "regular rate of pay" as §207 of the FLSA, incorporated the FLSA's rules (specifically §207(e)(4)) for under what circumstances fringe benefit contributions can be excluded from computing the regular rate of pay.

If Wisconsin wished to adopt with modification a provision of the FLSA or its regulations, it knew full well how to do so. For example, DWD §272.12(2)(c)2 largely copied 29 C.F.R. §785.18's provisions on the compensability of meal pay but omitted the language in §785.18 that "a shorter period may be sufficient under

32

special conditions", because Wisconsin intended to require payment for all meal breaks of less than 30 minutes in duration. Similarly, DWD §274.04(1) largely copied FLSA tests for executive, administrative and professional employees but with both a different salaried basis test, and by replacing the primary duties test with a test based on the percentage of employee's time spent performing non-exempt work. If the Wisconsin wanted to expand upon the §207(e)(4)'s definition of what fringe benefit contributions may be excluded from the regular rate to include cash payments made directly to employees, it would have promulgated a statute or regulation to do so. In the absence of such a statute or regulation direct cash payments to employees without restrictions on how the employee can spend the cash can no more be excluded from the regular rate under Wisconsin law when computing non-prevailing wage overtime pay; than it can under the FLSA when computing overtime pay for hours worked away from a jobsite covered by federal prevailing wage statutes.

That PGA could not, but in fact did exclude cash fringe payments when computing its employees' regular rate furnishes a further reason why PGA must use the regular rate to compute its employees' overtime pay. Even were the Court to read §207(g)(2) of the FLSA into Wisconsin law, the exemption only applies if "extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate." Because PGA did not include cash payments that it labelled cash fringes in computing its

employees' regular rate of pay, it cannot use the §207(g)(2) exemption method to compute its employees' overtime pay even if the exemption can be read into Wisconsin law.

**4.      Conclusion.**

For the above stated reasons, the Court should reverse the District Court, and find as a matter of law that (1) cash payments labelled by PGA as cash fringe payments must be included when computing overtime pay under the FLSA; (2) cash payments labelled by PGA as cash fringe payments must be included when computing Wisconsin prevailing wage overtime pay; and (3) for non-prevailing wage overtime hours worked Wisconsin law requires computing overtime pay using the employee's regular rate, with cash fringe payments included when computing the employee's regular rate.  The Court should remand this matter to the District Court for the computation of damages in a manner consistent with its opinion.

Dated this 24th day of June, 2019.

/s/Yingtao Ho
Yingtao Ho
yh@previant.com
THE PREVIANT LAW FIRM, S.C.
310 W. Wisconsin Ave., Suite 100 MW
Milwaukee, WI 53203
(414) 271-4500
(414) 271-6308 FAX

Attorneys for Plaintiffs

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

I, Yingtao Ho, hereby certify that this Brief of Appellant complies with the type-volume limitations set forth for principal briefs in Federal Rule of Appellate Procedure 32(a)(7). Said Brief, including headings, footnotes, and quotations, contains 10,099 words, as calculated by the Microsoft Word count function.

Dated this 24th day of June, 2019.

/s/Yingtao Ho

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2019, I electronically filed the foregoing Brief and required Short Appendix with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Yingtao Ho

## STATEMENT THAT ALL REQUIRED MATTERS
## ARE INCLUDED IN APPENDIX

Appellants, pursuant to Circuit Rule 30(d), hereby certify that all matters required by Circuit Rule 30(a) are attached to their brief, while all matters required by Circuit Rule 30(b) are attached to their appendix.

Dated this 24th day of June, 2019.

/s/Yingtao Ho\_\_\_\_
Yingtao Ho

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ERIC SCHILLING, BLAINE KROHN,
and ERIK SINCLAIR,

|  |  |  |
|---|---|---|
| Plaintiffs, | | OPINION AND ORDER |
| v. | | |
| | | 16-cv-202-wmc |
| PGA INC., | | |
| Defendant. | | |

In a prior opinion and order, the court granted summary judgment to defendant PGA, Inc., on plaintiffs' class and collective action claims.  (10/23/18 Op. & Order (dkt. #132).)  Plaintiffs had asserted:  (1) violations of state law and the FLSA based on defendants' failure to include the "cash fringe" payment in the overtime rate calculation; and (2) a violation of state law based on defendant's practice of calculating overtime using the rate of pay for the hours actually worked during overtime, rather than a straight time average rate.  The court found, neither theory of recovery was supported by the applicable law.  (*Id*.)  Before the court now is plaintiffs' motion for reconsideration, arguing that these rulings constitute a manifest error of law under Federal Rule of Civil Procedure 59.  (Dkt. #133.)  Because plaintiffs' motion falls well short of satisfying the standard of Rule 59, the court will deny it as well.

## OPINION

In this same case, the court previously set forth the standard for reviewing a motion for reconsideration.  (6/20/17 Op. & Order (dkt. #108) 2-3.)  "To prevail on a motion for reconsideration under [Rule 59(e)], the movant must present either newly discovered

evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.* (citation omitted). Consistent with this standard, Rule 59(e) is not meant to allow the parties "merely to relitigate old matters." *Diebitz v. Arreola*, 834 F. Supp. 298, 302 (E.D. Wis. 1993). Nor may a party use Rule 59(e) to "advance arguments that could or should have been presented to the district court prior to the judgment." *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 729 (7th Cir. 1999).

Nevertheless, plaintiffs seek reconsideration of all three of the court's principal rulings at summary judgment. *First*, with respect to their state law claim based on defendant's failure to include the cash fringe payment in the overtime calculation, plaintiffs contend that the court erred by failing to consider the definition of hourly rate of pay under Wis. Stat. § 66.0903(4). As an initial matter, plaintiffs failed to develop any theory of liability based on this statute. Indeed, the only reference to § 66.0903 in their briefs is to the private right of action provision under subsection 11. Moreover, there is no longer a subsection 4 in the current version of § 66.0903.[1] Instead, in their briefs and in oral

---

[1] From the court's research, subsection (4) required payment of 1.5 times "hourly basic rate of pay" for hours worked in excess of 40 hours on prevailing wage jobs. Even if relevant, moreover, this requirement does not answer the question of what constitutes "hourly basic rate of pay." Instead, as explained in the court's prior opinion and order, Wis. Stat. § 103.49(b), and in turn Wis. Admin. Code. DWD § 290.05, expressly governs overtime pay calculations for prevailing wage jobs. Regardless, plaintiffs could have, but failed to, develop any argument based on Wis. Stat. § 66.0903(4) in their briefing or at the hearing on summary judgment, thereby rendering relief under Rule 59(e) inappropriate.

argument to the court, plaintiffs' theory of liability entirely rested on the appropriate definition of "hourly rate of pay" under Wis. Admin. Code DWD § 290.05, the specific provision governing overtime payments for prevailing wage jobs.

Regardless, the court *did* address in its opinion and order the statutory definition of "hourly basic rate of pay" in Wis. Stat. § 103.49(2), which the parties agreed governs prevailing wage jobs. Based on the inclusion of the language "and any other bona fide economic benefits, whether paid *directly* or indirectly" -- language plaintiffs conveniently failed to include in their quote of this section in the motion for reconsideration (*see* dkt. #134 at 5) -- the court found that the statute and regulations contemplate exclusion of the cash fringe payment from the hourly basic rate of pay.

Finally, even if the court were to consider the merits of plaintiffs' new argument in their motion for reconsideration invoking § 66.0903(a), plaintiffs have failed to explain how the court's interpretation of "hourly basic rate" under § 103.49(2) and the appropriate DWD regulations constitutes a manifest error of law, in light of the fact that there is *no* caselaw on this theory of liability.

*Second*, plaintiffs challenge the court's conclusion that the FLSA does not require inclusion of cash fringe payments in determining the "regular rate of pay." Specifically, plaintiffs argue that the court should have concluded that these payments are required to be included in the definition of "regular rate of pay" because they constitute remuneration for employment. Unlike their new state law argument, plaintiffs made this very argument at summary judgment, and the court already rejected it. As the court previously explained, it makes far more sense to look to state law to define "regular rate of pay" given that

3

plaintiffs' claims concern prevailing wage jobs, which is after all a category of work entirely defined by state law.  And since state law does not require cash fringe payments to be included in the overtime premium calculation, the court found no such requirement under federal law, or, at the very least, found that plaintiffs failed to support this theory adequately.  By plaintiffs simply regurgitating these same arguments in their motion for reconsideration, they have certainly offered no basis for reconsideration, much less identified a manifest error of law, nor could they, given that there is no caselaw on these claims.

*Third*, plaintiffs seek reconsideration of this court's finding that plaintiffs failed to demonstrate that an employer is required under state law to use the straight time average rate -- rather than the rate of pay during overtime hours -- in calculating overtime pay.  In its opinion and order, the court actually recognized that plaintiffs may have *individualized* claims based on defendant's failure to reach an agreement to pay overtime using the rate of pay for work performed during those hours.  Because plaintiffs were pursuing this claim as a class, however, the theory of liability must be amenable to class-wide proof -- in other words, proof that the *only* acceptable method of calculating overtime under Wisconsin law for the class as a whole was the straight time average rate method.

In their motion for summary judgment, plaintiffs argued that there were no agreements or understandings with employees to pay overtime based on the rate of pay worked during the overtime hours, and, therefore, the claim for recovery *was* amenable to class-wide proof.  The problem is that plaintiffs failed to direct the court to any facts in support.  Perhaps plaintiffs could have developed this argument *and facts* in support of this

theory at summary judgment, and they simply failed to do so, but a motion for reconsideration does not provide a do-over.  To the contrary, plaintiffs' opportunity to "put up or shut up" was at summary judgment.  *See Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 509 F. Supp. 2d 752, 760 (W.D. Wis. 2007) ("[S]ummary judgment is 'not a dress rehearsal or practice run,' but the 'put up or shut up moment' in which a proponent of facts must show what evidence it has to convince a trier of fact to accept its version of events.") (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)).

Moreover, the court can now take judicial notice that in a companion case, defendant PGA put forth evidence that it *had* provided advanced notice of its intent to pay employees on at least some prevailing wage jobs at the rate of pay during overtime hours (e.g., the rate of pay for work completed on Friday).  *See Sinclair v. PGA, Inc.*, No. 17-cv-224-wmc, slip op. at *12 (W.D. Wis. Dec. 12, 2018) (dkt. #106).  At minimum, plaintiffs have *still* failed to direct the court to any *evidence* in support of its claim that this theory of liability could be adjudicated on a class-wide basis, even putting aside the fact that the evidence was not newly discovered.

Finding no basis for reconsideration, the court will deny plaintiff's motion.  In addition to these class and collective action claims, plaintiffs Schilling and Krohn also pursued individual claims based on allegations that they were misclassified as subjourney sheet metal workers in violation of state law.  The parties, however, have filed stipulations to dismiss those individual claims.  (Dkt. ##139, 140.)  Accordingly, as set forth below, the court will direct entry of judgment on the three class and collective actions claims, dismiss the individual claims, and close this case.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for reconsideration (dkt. #133) is DENIED.

2) The parties' stipulations of dismissal of count III (dkt. ##139, 140) are ACCEPTED and the remaining individual claims are dismissed with prejudice.

3) The clerk's office is directed to enter final judgment in defendant's favor on the three class and collective action claims as set forth in the court's opinion and order on the parties' cross-motions for summary judgment (*see* 10/23/18 Op. & Order (dkt. #132) Order ¶ 7).

Entered this 25th day of February, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge